IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PATRICIA GEIGER, and
MICHELLE HUNGET, on behalf of themselves
and all others similarly situated,

    Plaintiffs,

    v.

SISTERS OF CHARITY OF
LEAVENWORTH HEALTH SYSTEM, INC.,
*et al.*,

    Defendants.

Case No. 14-2378

## MEMORANDUM AND ORDER

Plaintiffs Patricia Geiger and Michelle Hunget, on behalf of themselves and all others similarly situated, filed this class action suit against defendants Sisters of Charity of Leavenworth Health System, Inc. ("SCLHS"), Sisters of Charity of Leavenworth Health System Separation Benefit Plan, Plan Administrator of the Sisters of Charity of Leavenworth Health System Separation Benefit Plan, Prime Healthcare Services, Inc. ("Prime"), Prime Healthcare Services–Saint John Leavenworth, LLC, and Prime Healthcare Services–Providence, LLC (collectively, the "Prime Defendants"). Plaintiffs allege three counts: (1) claim for benefits against SCLHS, (2) tortious interference with contract and/or tortious interference with prospective business relationship against the Prime Defendants, and (3) punitive damages against the Prime Defendants. The matter before the court is the Prime Defendants' Renewed Motion to Dismiss (Doc. 42).[1] The Prime Defendants contend they should be dismissed from this case, arguing that plaintiffs' complaint does not meet the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

---

[1] This is a renewed motion because plaintiffs were permitted to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). (*See* Doc. 41.)

**I. Case Summary**

Plaintiffs allege the following. In October 2012, SCLHS formally put Providence Medical Center and Saint John Hospital on the market. Effective October 26, 2012, SCLHS implemented the SCLHS Separation Benefit Plan (the "SBP") (Doc. 27-1), which was apparently intended to provide SCLHS's employees financial protection should they lose their jobs as a result of, among other things, the sale of SCLHS's hospitals. Specifically, the SBP's purpose was to "provide separation benefits to certain eligible associates who involuntarily lose their positions because of a change in operations, a facility relocation or closing, a consolidation or reduction in staff, or due to a sale or outsourcing of business where employment opportunities are not continued by the new company." (*Id*. at 2.) The SBP is covered by the Employee Retirement Income Security Act of 1964 ("ERISA").

In 2013, Prime purchased two hospitals from SCLHS—known today as Prime Healthcare Services–Saint John Leavenworth, LLC and Prime Healthcare Services–Providence, LLC (also defendants in this case). Before closing this purchase, SCLHS and Prime allegedly planned and implemented a layoff of approximately twenty-four employees in order to "right size" the business. These employees were terminated around March 29, 2013 and were provided benefits under the SBP. After closing the purchase, the Prime Defendants announced an additional layoff of forty-nine employees, including plaintiffs. These employees were terminated by April 15, 2013. Unlike the employees terminated in March, none of these employees were provided benefits under the SBP. Many of these employees were long-term SCLHS employees. These employees are the intended members of plaintiffs' proposed class.[2]

Plaintiffs allege that SCLHS owes them benefits under the SBP. Further, plaintiffs claim the

---

[2] The proposed class definition is: "All employees who were employed by SCLHS as of March 31, 2013, were Eligible Participants as of that date, and who were notified between April 1, 2013 and April 15, 2013 that they would be laid off." (Doc. 27 at 13.)

Prime Defendants' tortuously interfered with an existing contract (the SBP) by concealing the true number of planned layoffs during negotiations with SCLHS in order to lower the sale price.

## II.  Legal Standard—Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).  The Supreme Court set forth the new standard for pleadings in *Twombly*, stating that pleadings should include "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570.  "The pleading should include 'more than labels, conclusions, and a formulaic recitation of the elements of a cause of action.'" *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008).  The court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff."  *Burnett v. Mtg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  And the court must "resolve all reasonable inferences in the plaintiff's favor."  *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126–27 (10th Cir. 1998)).

## III.  Analysis

Against Prime, plaintiffs allege two claims:  tortious interference of existing contractual relations and tortious interference of prospective business relationship.  Under Kansas law, the elements of a tortious interference with contract claim are: (1) the existence of a contract; (2) the defendant's knowledge thereof; (3) the defendant's intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom.  *Dickens v. Snodgrass, Dunlap & Co.*, 872 P.2d 252 (Kan. 1994); *see also Snyder v. Am. Kennel Club*, 661 F. Supp. 2d 1219, 1236 (D. Kan. 2009), *aff'd*, 402 App'x. 397 (10th Cir. 2010).  Similarly, the elements for tortious interference of prospective business relationship are:  (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or

expectancy by the defendant; (3) plaintiff was reasonably certain to have continued the relationship or realized the expectancy except for the conduct of the defendant; (4) intentional misconduct by defendant; and (5) the damages plaintiff suffered are a direct or proximate cause of defendant's misconduct. *Turner v. Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986). Under either claim, plaintiffs must also prove malicious conduct by Prime. *Id.*; *see also* PIK 4th 124.91–124.92.

Taking the facts in plaintiffs' complaint as true, the court believes plaintiffs' Amended Complaint (Doc. 27) complies with *Twombly*. One of the stated purposes of the *Twombly* decision was to give defendants fair notice as to what the claim(s) against it are and the grounds upon which those claims rest. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (discussing *Twombly*, 550 U.S. at 555). Plaintiffs have given such notice here. They have identified the contract at issue and established the Prime Defendants' knowledge of that contract. Plaintiffs also give more than enough facts for the Prime Defendants to know the grounds upon which plaintiffs' arguments (concerning breach and the absence of justification) rest. While the Prime Defendants argue that plaintiffs have not pleaded facts showing malice,[3] the court disagrees. Moreover, plaintiffs have pleaded facts supporting several, if not all, of the factors for demonstrating malice in the context of a tortious interference claim. *See Turner*, 722 P.2d at 1116–17. For these reasons, the Prime Defendants' motion is denied.

**IT IS THEREFORE ORDERED** that Prime Defendants' Renewed Motion to Dismiss (Doc. 42) is denied.

Dated this 23rd day of February, 2015, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**

---

[3] Malice is defined as "a state of mind characterized by an intent to do a harmful act without a reasonable justification or excuse." PIK 4th 103.05.