IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PATRICIA GEIGER, and
MICHELLE HUNGET, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

      v.                                      Case No. 14-2378

SISTERS OF CHARITY OF
LEAVENWORTH HEALTH SYSTEM, INC.,
*et al.*,

      Defendants.

## MEMORANDUM AND ORDER

The matter before the court is on plaintiffs' unopposed motion for preliminary approval of a proposed class action settlement (Doc. 78).  For the reasons below, the court grants plaintiffs' motion, thereby approving the parties' preliminary class action settlement, certifying the proposed settlement class, appointing plaintiffs' counsel as class counsel, approving the proposed notice of the class action and settlement, and adopting plaintiffs' proposed schedule for final settlement approval.

### I.  Background

On July 30, 2014, named-plaintiffs Patricia Geiger and Michelle Hunget, on behalf of themselves and all others similarly situated, filed a class action complaint pursuant to Federal Rule of Civil Procedure 23 against defendants Sisters of Charity of Leavenworth Health System, Inc., SCLHS's Separation Benefit Plan (the "Benefit Plan"), and the Benefit Plan Administrator (collectively, the "SCLHS Defendants"), as well as Prime Healthcare Services, Inc., Prime Healthcare Services–Saint John Leavenworth, LLC, and Prime Healthcare Services–Providence, LLC (collectively, the "Prime Defendants").  Plaintiffs, who were laid off from their jobs in April 2013, allege they were deprived of separation benefits under the Benefit Plan in violation of the Employee

Retirement Income Security Act ("ERISA") and Kansas state law.  Plaintiffs sought to represent a class of all employees who were employed by SCLHS as of March 31, 2013, who were eligible participants in the Benefit Plan as of that date, and who were notified between April 1, 2013 and April 15, 2013 that they would be laid off.  On October 10, 2014, plaintiffs filed their First Amended Complaint.  (Doc. 27.)  The Prime Defendants filed a motion to dismiss under Federal Rule 12(b)(6), (Doc. 42), and both defendants have asserted cross-claims, against each other.  (Docs. 51 and 57.)  On February 23, 2015, the court denied the Prime Defendant's motion to dismiss.  (Doc. 63.)  Since then, the Prime Defendants have answered the complaint.  (Doc. 66.)

On April 2, 2015, the parties engaged in a full day of mediation with Phil Miller at Kansas City Mediation Services, LC, during which the parties nearly reached a settlement.  After further communications with Mr. Miller, the parties reached a Settlement Agreement (Doc. 80-1 at 2–19).

## II. The Settlement Agreement

The parties agree to settle this lawsuit for a total settlement amount of $550,000, which is broken into two parts: $525,000 and $25,000.  The $525,000 is one-hundred percent of the actual separation benefits that plaintiffs, as a class, would have received under the Benefit Plan had they been paid those benefits upon termination—assuming the class was entitled to such benefits ("Baseline Amount").  The $25,000 is a fixed amount paid in addition to the Baseline Amount.  As part of the settlement, defendants agreed to allow plaintiffs to conduct further due diligence to ensure the accuracy of the information produced in discovery and, by extension, the Baseline Amount.  Such adjustment (a "Due Diligence Adjustment") can only *increase* the Baseline Amount.  In other words, under no circumstances, will the Baseline Amount fall below $525,000.  The resulting formula is: the Baseline Amount plus any Due Diligence Adjustment plus the fixed $25,000 equals the "Finalized Settlement Fund."  The lowest possible amount of the Finalized Settlement Fund is $550,000.  By way

of example, if plaintiffs' Due Diligence Adjustment is $50,000, the Baseline Amount would increase to $575,000, which is further increased by the fixed $25,000, for a Finalized Settlement Fund of $600,000.

The Finalized Settlement Fund covers class members' awards, service payments to the named-plaintiffs, attorney's fees and costs, and a reserve set aside for reasonable costs of the settlement administration. The remaining Finalized Settlement Fund will be distributed to class members on a pro rata basis, consistent with the Benefit Plan.

## III. Analysis

### A. Preliminary Approval of the Parties' Settlement Agreement

The law favors compromise and settlement of class action suits. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Federal Rule of Civil Procedure 23(e) authorizes a court to approve a class action settlement after notice, a hearing, and "on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts determine whether a proposed settlement is fair, reasonable, and adequate by considering:

1. whether the proposed settlement was fairly and honestly negotiated;
2. whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
3. whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
4. the judgment of the parties that the settlement is fair and reasonable

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002)); *Jackson v. Ash*, No. 13-2504-EFM-JPO, 2015 WL 751835, at *1-2 (D. Kan. Feb. 23, 2015). The court will now analyze those factors in the context of preliminarily approving the Settlement Agreement so as to proceed with providing notice to class members.

### 1. *The Proposed Settlement was Fairly and Honestly Negotiated*

The court believes the settlement in this case was fairly and honestly negotiated. Plaintiffs' counsel conducted a thorough investigation of the claims and defenses, analyzing tens of thousands of pages of documents, including plaintiffs' personnel records, information regarding the layoff that impacted the class, and documents regarding potential damages. The Prime Defendants filed two motions to dismiss, one of which was denied as moot and the other denied on the merits. Similarly, defendants filed cross-claims against each other. All parties served and responded to discovery requests and interrogatories, enabling plaintiffs to assess the proper makeup of the class and to perform damages calculations. This discovery facilitated arms-length settlement negotiations with a mediator and ultimately resulted in this proposed settlement. Additionally, defendants agreed to allow plaintiffs' counsel to perform additional due diligence to ensure that the class was properly identified and that the factors used to assess separation pay for each class member were accurate. The court is satisfied this factor weighs in favor of preliminarily approving the settlement.

### 2. *Serious Questions of Law & Fact Exist Placing the Ultimate Outcome in Doubt*

Having ruled upon the Prime Defendants' motions to dismiss for failure to state a claim, the court is familiar with the parties' arguments as developed thus far. This case involved the Prime Defendants' purchase of two hospitals from the SCLHS Defendants. Before closing on the purchase, defendants allegedly planned and implemented a layoff of approximately twenty-four employees in

order to "right size" the business.  Those employees were provided benefits under the Benefit Plan.

After closing the purchase, and sometime between April 1 and April 15, 2013, the Prime Defendants

announced an additional layoff of forty-nine employees, including plaintiffs.  Unlike the previous

layoff, none of these employees, many of whom were long-term SCLHS employees, was provided

benefits under the Benefit Plan.  Numerous serious questions of law and fact place the ultimate

outcome of this case in real doubt, such as the employees' employment status, the interpretation of the

Benefit Plan, and defendants' knowledge and intent regarding the layoffs when they closed on the

purchase of the two hospitals.  Indeed, it is not certain that plaintiffs would survive summary

judgment.  Ultimately, the court believes this factor weighs in favor of preliminarily approving the

settlement.

### 3.  *Value of Immediate Recovery*

Next, the court must consider is "whether the value of an immediate recovery outweighs the

possibility of future relief after protracted and expensive litigation."  *Gottlieb*, 11 F.3d at 1014.  The

value of the settlement must be weighed against "the possibility of some greater relief at a later time,

taking into consideration the additional risks and costs that go hand in hand with protracted litigation."

*Id.* at 1015.  Under the terms of the proposed settlement, the parties agreed to settle for a total sum of

not less than $550,000, which represents one-hundred percent of the benefits for which class members,

as a class, were eligible and would have received had they been discharged before the purchase (March

2013) rather than after the purchase (April 2013).  If plaintiffs proceeded to a trial on the merits, there

is a risk they would not have been able to establish liability or that the amount of damages ultimately

awarded may have been less than the amounts guaranteed by this settlement.  Moreover, given that no

motions for summary judgment have been filed, the size of the recovery, if any, would have been

reduced by additional costs, such as expert witness fees, incurred by plaintiffs' counsel in taking this

case through trial.  On the other hand, a jury may have found defendants liable and awarded a sum higher than what has been guaranteed under this settlement.  But the immediate recovery of the total sum of benefits due to plaintiffs under the Benefit Plan outweighs the mere *possibility* of future relief after protracted and expensive litigation.  This factor also weighs in favor of preliminarily approving this settlement.  Indeed, the court believes the combination of the second and third factors—that serious questions of law and fact place the ultimate outcome of this litigation in doubt, combined with the fact that the possibility of obtaining better relief after protracted and expensive litigation is unlikely—weighs heavily in favor of such approval.

### *4.  The Parties' Judgment that the Settlement is Fair and Reasonable*

Finally, the court is satisfied that the attorneys on both sides of this case genuinely believe the settlement is fair and reasonable.  The parties engaged in arms-length negotiations, along with a mediator, to reach this settlement.  And defendants granted plaintiffs' counsel additional time for due diligence in verifying the class and the damages calculations.  Ultimately, plaintiffs, as a class, will receive what they would have received under the Benefit Plan, minus litigation costs.  This factor also weighs in favor of settlement approval.

### B.  Conditional Rule 23 Class Certification for Purposes of Settlement

For settlement purposes, plaintiffs seek conditional certification of the proposed class under Federal Rule of Civil Procedure 23.  For a court to grant class certification, plaintiffs must show that the class satisfies Rule 23(a) and at least one of the three factors in Rule 23(b)(a)–(c).[1]

As for Rule 23(a), the court finds that conditional certification of this class is appropriate because (1) the settlement class is so numerous that joinder of at least twenty-nine members is

---

[1] The court need not consider the fourth factor—the difficulties likely to be encountered in the management of the class action—when the class is being certified solely for the purpose of settlement.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 183 (W.D.N.Y. 2005) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial")).

impractical; (2) there are common questions of law and fact common to the class; (3) plaintiffs' claims are typical of the claims of the class; and (4) named-plaintiffs and their counsel will fairly and adequately protect the interests of the settlement class.

With respect to Rule 23(b)(3), the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The court also finds that a class action is the superior method for resolving this controversy, given the nature of the class members' individual claims, their lack of interest in individually controlling the prosecution of at least twenty-nine separate actions, and the judicial economy and efficiency that resolution on a class-wide basis promotes. Therefore, under Rule 23(b)(3), and because defendants do not oppose plaintiffs' motion, the court conditionally certifies the following class for settlement purposes only:

> All former non-executive employees who were employed by SCLHS as of March 31, 2013, were Eligible Participants in the SCLHS Separation Benefit Plan as of that date, and who were notified between April 1, 2013 and April 15, 2013 that they would be laid off. An Eligible Participant is an employee of SCLHS as of March 31, 2013 who was employed in a non-executive level position and was regularly scheduled to work at least 16 hours per week.

(Doc. 78 at 16–17.)

### C. Appointment of Class Counsel

Rule 23(g) governs the appointment of class counsel for a (conditionally) certified class, setting forth the following criteria the court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(l)(A). The court may also consider any other matter

pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed. R. Civ.

P. 23(g)(l)(B).  Nothing in the record suggests plaintiffs' counsel should not be appointed.  The court

therefore appoints Matthew W. Ray of Texas-based Simon, Ray & Winikka, LLP, and Tyler Peters of

Kansas-based Payne & Jones, Chtd., as plaintiffs' class counsel.

### D.  Proposed Notice

Pursuant to Rule 23(c)(2)(B), the notice must be the best notice practicable under the

circumstances, include individual notice to all members who can be identified through reasonable

effort, and clearly and concisely state in plain, easily understood language:

- the nature of the action;
- the definition of the class certified;
- the class claims, issues, or defenses;
- that a class member may enter an appearance through an attorney if the member so desires;
- that the court will exclude from the class any member who requests exclusion;
- the time and manner for requesting exclusion; and
- the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see In re Motor Fuel Temperature Sales Practices Litigation,* 258 F.R.D.

671, 676 (D. Kan. 2009).  The parties submitted an original proposed notice (Doc. 80-1 at 21–46), but

after a telephone conference between the court and the parties, plaintiffs filed a revised proposed

notice, (Doc. 84-1).  The court finds that the revised notice will provide the best practicable notice

under the circumstances and is reasonably calculated to apprise class members of the pendency of this

action and their right to object or to exclude themselves from the class.  The court further finds this

notice satisfies Federal Rule of Civil Procedure 23.  The court therefore approves and adopts the

proposed notice filed on June 30, 2015 (Doc. 84-1).

### E.  Notice and Distribution Plan

The parties propose the following schedule, which is also set forth in the Settlement Agreement (Doc. 80-1 at 2–19).  The court approves and adopts the parties' proposed schedule, subject to some minor revisions by the court.  The deadlines set forth in the table below are general guidelines, as the parties may need to shift deadlines to account for unforeseen issues.  However, the fairness hearing date, the deadline for class members filing a notice of appearance, and the deadline for plaintiffs' Motion for Final Settlement Approval are dates certain.  Because the schedule may change due to unforeseen issues, the court will set the dates with respect to the distribution of the Finalized Settlement Fund's monies at the final fairness hearing.

**IT IS THEREFORE ORDERED** that plaintiffs' unopposed motion for preliminary approval of proposed class action settlement (Doc. 78) is granted.  Defendant's motion to dismiss plaintiff's counterclaim (Doc 69) is denied as moot.

**IT IS FURTHER ORDERED** that the final fairness hearing is scheduled for January 5, 2016 at 9:30 a.m. in Courtroom 463 in the Kansas City, Kansas Federal Courthouse.  At this hearing, the court will determine whether the Settlement Agreement is fair, reasonable, and adequate and should be approved.

**IT IS FURTHER ORDERED** that, on or before the earlier of (a) thirty days after the Opt-Out Period has ended or (b) December 29, 2015, plaintiffs will file a Motion for Final Settlement Approval with this court.

**IT IS FURTHER ORDERED** that the court adopts the following timetable, as a (reasonable) guideline for the parties to follow.  With two exceptions, the following dates are (a) approximate on-or-before dates and (b) dates after the date of this order.

| | |
|---|---|
| Defendants provide the Claims Administrator (to be chosen by the parties) and Class Counsel (as appointed in this order) with an updated list, in electronic form, of class members' names, last known addresses, and phone numbers, as well as their hire date with SCLHS, last position held, last wage rate, and the number of regular hours scheduled per week. | 21 days (3 weeks) |
| Defendants transfer the Finalized Settlement Fund into the qualified settlement fund pursuant to the Settlement Agreement (Doc. 80-1 at 2–19). | 28 days (4 weeks) |
| Claims Administrator mails the approved notice to class members. | 35 days (5 weeks) |
| Unless staying in the class (doing nothing), Class Members must do **one** of the following, *as the failure to so will forever bar that class member's claim*:<br><br>    (a) opt-out using the procedures outlined in the Settlement Agreement; | 63 days (9 weeks) |
| **OR**<br><br>    (b) file a Statement of Objection or Notice of Intention to Appear with this court. | December 22, 2015 |
| Responses to Class Members' Objections Due | December 29, 2015 |

Dated this 27th day of July, 2015, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**